UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ZACKARIE CARTER,     Plaintiff,

v.     Civil Action No. 3:17-cv-04-DJH-CHL

IMI SOUTH, LLC,     Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Zackarie Carter worked for Defendant IMI South, LLC as a concrete-truck driver for approximately three weeks in 2016. IMI terminated Carter's employment after he failed to report back to work after running a personal errand. Carter asserts claims of race discrimination under Title VII of the Civil Rights Act and the Kentucky Civil Rights Act (KCRA), violations of the Kentucky Wage and Hour Act, and retaliation under Title VII, the KCRA, and the Wage and Hour Act. (Docket No. 11-1) Carter's counsel withdrew from this matter, citing an inability to communicate with her client (D.N. 17; *see* D.N. 15), and Carter failed to obtain new counsel. (D.N. 18) Carter is therefore proceeding pro se in this matter. IMI seeks summary judgment on all claims asserted by Carter. (D.N. 24) For the reasons set forth below, IMI's motion will be granted.

**I.     BACKGROUND**

On March 28, 2016, IMI hired Carter as a concrete-truck driver trainee at its Louisville, Kentucky facility. (D.N. 24-3, PageID # 139) In his verified complaint,[1] Carter alleges that he

---

[1] The Court is not certain that Carter's complaint is truly verified such that it may be treated as an affidavit for summary-judgment purposes. For example, Carter did not declare "under penalty of perjury" that the statements in the complaint were true and accurate. (*See* D.N. 11-1, PageID # 84) *See Fields v. Cardinal Health*, No. 3:16-cv-100-DJH-CHL, 2017 WL 3910226, at \*4 n.3 (W.D. Ky. Sept. 6, 2017) (quoting 28 U.S.C. § 1746(2)). The Court need not resolve this issue,

1

experienced "taunts, pranks, and bullying by his white supervisors and co-workers" during his employment with IMI. (D.N. 11-1, PageID # 78) Carter further alleges that "[u]nlike his white peers, [he] also experienced delays in the transmission of his pay," and that after he complained of these delays, "the racially charged comments and taunts increased." (*Id.*)

Jason Janes, IMI's human resources manager, explains in an affidavit that Carter's first paycheck was delayed due to his use of two different addresses on his employment forms. (D.N. 24-3, PageID # 140) When Carter later complained that his paycheck had been mailed to his home rather than delivered by hand, Janes promptly provided Carter with a new, hand-delivered paycheck. (*Id.*) The next day, Carter reported that he was having trouble finding a bank that would cash his paycheck. (*Id.*, PageID # 141) IMI permitted Carter to leave work and cash his paycheck at the company's bank, instructing him to return to work immediately thereafter. (*Id.*) When Carter failed to return to work after two hours, his supervisor called him to ask why he had not returned to work as instructed. (*Id.*) Carter responded that he was paying some bills and would be back later, then hung up the phone. (*Id.*)

In April 2016, IMI terminated Carter's employment. (*Id.*, PageID # 139, 141) Janes states in his affidavit that IMI terminated Carter's employment due to his uncooperativeness, unprofessional behavior, and failure to return to work. (*Id.*, PageID # 141) Carter alleges that Janes simply told him, "we've had so many problems with you, we are just going to cut ties right now." (D.N. 11-1, PageID # 80)

Carter filed this action against IMI in Jefferson Circuit Court. (*Id.*, PageID # 76) In his verified complaint, Carter asserts claims of race discrimination, wage-and-hour violations, and

---

however. Even assuming the truth of the allegations in the verified complaint, Carter's claims fail for the reasons explained in this memorandum opinion.

retaliation. (*Id.*, PageID # 80–82) IMI removed the action to this Court, invoking the Court's federal-question jurisdiction. (D.N. 11) IMI now seeks summary judgment on all of Carter's claims. (D.N. 24) Carter failed to respond to IMI's summary-judgment motion, and he has not sought an extension of time to do so.

**II.     STANDARD**

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). "A 'genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party.'" *Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 444 (6th Cir. 2017) (quoting *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 255). However, the Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty.*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (noting that "a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

A plaintiff's "failure to respond potentially could constitute waiver of any opposition to [a defendant's] motion." *Collins v. Waste Mgmt. of Ky. Holdings, Inc.*, No. 06-175-ART, 2008 WL 2794661, at *5 (E.D. Ky. July 18, 2008). "This holds true in the summary judgment context . . . if the moving party has met its initial burden under Rule 56(c)." *Id.* "[U]nder Rule 56(c), a party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact." *Carver v. Bunch*, 946 F.2d 451, 454 (6th Cir. 1991). "[T]he movant must always bear this initial burden regardless if an adverse party fails to respond." *Id.* at 455. The Supreme Court has clarified, however, that this burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Catrett*, 477 U.S. at 325.

## III. DISCUSSION

### A. Race Discrimination

Carter first alleges that he was discriminated against on the basis of race in violation of Title VII and the KCRA. (D.N. 11-1, PageID # 80–81) Courts interpret Title VII and the KCRA using the same standards. *Perry v. AutoZoners, LLC*, 948 F. Supp. 2d 778, 787 (W.D. Ky. 2013) (citing *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000)). Carter's complaint appears to allege both disparate treatment and a hostile work environment based on race. (*See* D.N. 11-1, PageID # 77–81)

Carter has not presented any direct evidence of discrimination. Thus, his claims are analyzed using the familiar *McDonnell Douglas* burden-shifting framework. *See Perry*, 948 F. Supp. 2d at 787. Under this framework, Carter "bears the initial burden of proving a prima facie

case for race discrimination." *Id.* The burden then shifts to IMI "to provide legitimate, nondiscriminatory reasons for the adverse employment action." *Id.* "If [IMI] is successful in this regard, the burden shifts back to [Carter] to show that [IMI's] asserted nondiscriminatory reasons were mere pretext for discrimination." *Id.*

> A prima facie case for racial discrimination in the employment context requires the plaintiff to prove the following: "(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees."

*Id.* (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008)).

It is undisputed that Carter, as an African-American, is a member of a protected class. (*See* D.N. 24-1, PageID # 130) The Court will assume for purposes of this analysis that Carter was qualified for his job. And Carter clearly suffered an adverse employment action when he was terminated (D.N. 24-3, PageID # 141). *See Perry*, 948 F. Supp. 2d at 787. But Carter has "offered no proof that a similarly situated [white] employee was treated differently." *See Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). In particular, Carter has not identified any white IMI employee who demonstrated unprofessional conduct or failed to report for work while still avoiding termination. (*See* D.N. 11-1) *See Strong v. Orkand Corp.*, 83 F. App'x 751, 754 (6th Cir. 2003) (requiring race-discrimination plaintiff to establish that "for the same or similar conduct, he was treated differently than similarly-situated non-minority employees" (citation omitted)). Carter has therefore failed to prove a prima facie case of race discrimination. *See Newman*, 266 F.3d at 406.

Even if Carter had proven a prima facie case, IMI would still be entitled to summary judgment because it has offered legitimate nondiscriminatory reasons for Carter's termination and Carter has not shown that the reasons were pretextual. *See Perry*, 948 F. Supp. 2d at 787. The

5

reasons offered by IMI are unrebutted. IMI asserts that it terminated Carter's employment after he left work, with permission, to cash his paycheck; failed to return to work immediately thereafter; and hung up the phone on his supervisor when asked if he had received permission to make additional stops. (D.N. 24-3, PageID # 141) IMI has therefore met its burden to provide legitimate nondiscriminatory reasons for its action. *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009) (explaining that "[t]his is merely a burden of production, not of persuasion, and it does not involve a credibility assessment"). And Carter has failed to provide "sufficient evidence from which the jury could 'reasonably reject [IMI's] explanation' and infer that [IMI] 'intentionally discriminated' against him." *Perry*, 948 F. Supp. 2d at 790 (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001)). The Court will therefore grant summary judgment to IMI on Carter's disparate-treatment race-discrimination claims.

The *McDonnell Douglas* burden-shifting framework also applies to Carter's hostile-work-environment claims. *See Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007). But in order to establish a prima facie case on these claims, Carter must instead prove "(1) [he] is a member of a protected class; (2) [he] was subjected to unwelcomed racial harassment; (3) the harassment was race based; (4) the harassment unreasonably interfered with [his] work performance by creating an environment that was intimidating, hostile, or offensive; and (5) employer liability." *Id.* (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).

Carter alleges in part that his trainer at IMI would "steal the fire extinguisher from [his] truck" and "fill the truck's drum with water." (D.N. 11-1, PageID # 78) But as IMI points out (D.N. 24-1, PageID # 130–31), these "pranks" were actually parts of a training program applied to all employees regardless of race. (D.N. 24-3, PageID # 141–42) Thus, the evidence indicates that much of the alleged harassment was not race-based. *See Harris v. Burger King Corp.*, 993 F.

Supp. 2d 677, 690 (W.D. Ky. 2014) (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011)) ("Harassment is based on race when it would not have occurred but for the plaintiff's race . . . .").

In any event, Carter has not proven that the alleged harassment unreasonably interfered with his work performance by creating a hostile environment. To satisfy this prong, Carter "must present evidence showing that under the 'totality of the circumstances' the harassment was 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Shines v. Envtl. & Pub. Prot. Cabinet/Dep't of Fin. Insts.*, No. 1:08-CV-00156-R, 2010 WL 2464982, at *6 (W.D. Ky. June 16, 2010) (quoting *Clay*, 501 F.3d at 707). "The work environment 'must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). "A court must examine all of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

In addition to the allegations noted above, Carter alleges that his trainer "would leave [him] in his truck in an unfamiliar location, telling him to find his way back to the company's property, while white drivers were escorted back to the home site." (D.N. 11-1, PageID # 78) Carter further alleges that he experienced "taunts, pranks, and bullying by his white superiors and co-workers" and that, unlike his white peers, he "experienced delays in the transmission of his pay." (*Id.*) Finally, Carter alleges that his supervisor "carried a firearm . . . for the purpose of keeping order by the threat of violence or death" and stated that "[a]ll [his] kind want[ed] [was] a handout." (*Id.*,

7

PageID # 79) IMI denies that this alleged conduct occurred. (D.N. 5, PageID # 28–29) While troubling, the Court is unable to conclude that these allegations, even taken together, are sufficiently severe or pervasive to support a hostile-work-environment claim. As an initial matter, several of the allegations are "unrelated to racial hostility and thus are not relevant to [Carter's] race-based hostile work environment claims." *Lovelace v. BP Prods. N. Am., Inc.*, 252 F. App'x 33, 40 (6th Cir. 2007); *see also id.* at 41 (explaining that "subjective beliefs that . . . incidents were racially motivated . . . are insufficient to create a genuine issue of material fact regarding whether the work environment was racially hostile in violation of Title VII"). Moreover, "even offensive and bigoted conduct [is] insufficient to constitute a hostile work environment if it is neither pervasive nor severe enough to satisfy the claim's requirements." *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017). Because Carter has not shown that the incidents alleged here unreasonably interfered with his work performance, his prima facie case of hostile work environment fails. *See Woods v. FacilitySource, LLC*, 640 F. App'x 478, 491–92 (6th Cir. 2016); *see also Lovelace*, 252 F. App'x at 41 (explaining that "subjective beliefs that . . . incidents . . . interfered with [the plaintiffs'] work . . . are insufficient to create a genuine issue of material fact").

Finally, the Court notes that even if Carter had established a prima facie case, his hostile-work-environment claims would still fail because, as explained above, he has not shown that IMI's stated reasons for his termination were mere pretext for discrimination. The Court will therefore grant summary judgment to IMI on Carter's hostile-work-environment claims.

B.  **Wage-and-Hour Violations**

Carter further alleges that he was not compensated for his work and that he was forced to incur additional costs in an effort to obtain "replacement" payments from IMI, in violation of the

8

Kentucky Wage and Hour Act. (D.N. 11-1, PageID # 81) The Kentucky Wage and Hour Act holds liable "any employer who pays any employee less than wages and overtime compensation to which such employee is entitled." Ky. Rev. Stat. § 337.385(1). Further, the Act provides that "[e]very employer doing business in this state shall . . . pay to each of its employees all wages or salary earned to a day not more than eighteen (18) days prior to the date of that payment." § 337.020.

Carter asserts in his verified complaint that "[a]s of the date of [the] [c]omplaint, [he] has not received the entire portion of compensation owed to him by IMI for work he completed on the company's behalf." (D.N. 11-1, PageID # 80) Ordinarily, "'a verified complaint . . . satisfies the burden of the nonmovant to respond' to a motion for summary judgment." *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999)); *see also Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) (noting that a verified complaint can "give rise to genuine issues of material fact"). But Carter's allegation that he has not received full compensation is devoid of any specific facts such as the amount unpaid or the days of work for which he was not compensated. (*See* D.N. 11-1, PageID # 81) Allegations made at this "high level of generality" are insufficient to present a genuine issue of material fact. *Mourad v. Homeward Residential, Inc.*, 517 F. App'x 360, 366 (6th Cir. 2013); *see also Baze v. Parker*, No. 5:11-CV-P83-R, 2013 WL 3894961, at *7 (W.D. Ky. July 26, 2013) ("Simply put, an affidavit or verified complaint 'contain[ing] only conclusory allegations and naked conclusions of law' does not create a genuine issue of fact for trial." (alteration in original) (quoting *Sigmon v. Appalachian Coal Props., Inc.*, 400 F. App'x 43, 49 (6th Cir. 2010))); *cf. Moran v. Al Basit LLC*, 788 F.3d 201, 206 (6th Cir. 2015) (finding a genuine issue of material fact as to the plaintiff's unpaid-overtime claim where the plaintiff "describe[d] his typical work schedule with some specificity"); *Bellar*

*v. City of Auburn, Kentucky*, No. 1:15-CV-00038, 2017 WL 157833, at *3 (W.D. Ky. Jan. 13, 2017) (same). By contrast, IMI has presented evidence in the form of an admission by Carter that he was "paid for all hours worked." (D.N. 24-4, PageID # 147)[2]

Carter's allegations that his paychecks were delayed (D.N. 11-1, PageID # 78) are similarly conclusory. As such, they do not create a genuine issue of material fact. *See Mourad*, 517 F. App'x at 366. Meanwhile, IMI has presented evidence that Carter was paid in a timely fashion. (D.N. 24-4, PageID # 147) Finally, Carter complains that he had trouble cashing his paychecks and that IMI failed to pay him through direct deposit. (D.N. 11-1, PageID # 78) But he points to no provision of the Kentucky Wage and Hour Act requiring that employees be paid in the manner of their choosing. *See* Ky. Rev. Stat. § 337.010(1)(c) ("The wages shall be payable in legal tender of the United States, checks on banks, direct deposits, or payroll card accounts . . . ."). Because the undisputed evidence shows that Carter was timely paid for all hours worked, the Court will grant summary judgment to IMI on Carter's wage-and-hour claims.

### C. Retaliation

Finally, Carter alleges that IMI retaliated against him in violation of Title VII, the KCRA, and the Kentucky Wage and Hour Act. (D.N. 11-1, PageID # 81–82) "Retaliation claims under the KCRA are evaluated under the same standard as we use to evaluate federal Title VII claims." *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014); *see also Popeck v. Rawlings Co.*, No. 3:16-CV-00138-GNS-DW, 2018 WL 2074198, at *13 (W.D. Ky. May 3, 2018) (applying same standard to retaliation claim brought under the Kentucky Wage and Hour Act).

---

[2] Carter never responded to IMI's December 22, 2017 requests for admission (D.N. 24-4). The matters in the requests are therefore deemed admitted. *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.")

Carter provides no direct evidence of retaliation; thus, his claims are again evaluated using the *McDonnell Douglas* burden-shifting framework. *See Montell*, 757 F.3d at 504.

> Under that framework, [Carter] must show that [he] (1) engaged in a protected activity, (2) that [IMI] knew of [his] protected conduct, (3) that [IMI] took an adverse employment action against [him] after [his] protected conduct, and (4) that there was a causal connection between the exercise of [Carter's] protected right and the adverse employment action taken by [IMI].

*Id.* "If [Carter] makes out this prima facie case, the burden shifts to [IMI] to produce a legitimate, non-retaliatory reason for its action." *Id.* "Assuming that [IMI] is able to produce such an explanation, the burden shifts back to [Carter] to put forward competent evidence from which a reasonable jury could conclude that the stated reason is merely pretextual." *Id.*

Carter alleges that he "complained of the delays in payment and the front office's practice of singling him out to receive invalid checks." (D.N. 11-1, PageID # 78) Further, he alleges that "racially charged comments and taunts increased" after he registered his complaints and that he "experienced retaliation by his white supervisors in the aftermath of his complaints." (*Id.*, PageID # 78–79) But Carter did not specifically complain that IMI had violated the Kentucky Wage and Hour Act. It is therefore unclear whether he engaged in a protected activity. *See Popeck*, 2018 WL 2074198, at *17 (emphasis in original) (finding no protected activity where the plaintiff "did *not* tell [the defendant company's owner] that [the company's] practice of prorating her pay . . . *violated* the KWHA"). For purposes of this analysis, however, the Court will assume that Carter did engage in a protected activity and that IMI knew of that activity.

While the Court is unable to conclude that the alleged racially charged comments and taunts qualify as an adverse employment action,[3] Carter's termination satisfies this element. *See*

---

[3] Carter has not presented any evidence to show that these alleged comments "were so important as to dissuade a reasonable worker from making or supporting a [wage-and-hour complaint]." *Vaughn v. Louisville Water Co.*, 302 F. App'x 337, 348 (6th Cir. 2008); *see id.* (finding that

*Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 470 (6th Cir. 2012). And finally, it appears that Carter was terminated just one week after he began complaining about his paychecks. (*See* D.N. 24-3, PageID # 140–41) This close temporal proximity may be sufficient to establish the causation element. *See Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 562–63 (6th Cir. 2004) (finding three-month gap to be sufficient to establish causation element of Title VII retaliation claim). Because the burden of establishing a prima facie case in a retaliation action is "easily met," the Court will proceed with the remaining steps of the *McDonnell Douglas* framework. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (citation omitted).

As with the race-discrimination claims, Carter's retaliation claims fail because IMI has articulated legitimate reasons for his termination (*see* D.N. 24-3, PageID # 141) and Carter has not shown that those reasons were pretextual. *See Montell*, 757 F.3d at 504. Indeed, Carter has failed to address IMI's assertions. IMI is entitled to summary judgment on Carter's claims of retaliation.

### D. Failure to Prosecute

In the alternative, the Court finds that dismissal for failure to prosecute is warranted here. Rule 41(b) allows a district court "to dismiss the action or any claim" if the plaintiff has "fail[ed] to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." Fed. R. Civ. P. 41(b). While the language of Rule 41(b) contemplates a motion by the defendant, federal courts have the power to dismiss a complaint *sua sponte*. *See Link v. Wabash R. Co.*, 370 U.S. 626, 632–33 (1962); *Consolidation Coal Co. v. Gooding*, 703 F.2d 230, 232 (6th Cir. 1983). The Sixth Circuit considers four factors when reviewing a Rule 41(b) dismissal:

> (1) Whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that

---

supervisor's expressions of anger toward the plaintiff did not "rise to the level of a materially adverse action" in the absence of such evidence).

> failure to cooperate could lead to dismissal; and (4) whether less
> drastic sanctions were imposed or considered before dismissal was
> ordered.

*Knoll v. AT&T*, 176 F.3d 359, 363 (6th Cir. 1999). None of the above factors is dispositive; rather, a case should be dismissed "where there is a clear record of delay or contumacious conduct." *Id.* Contumacious conduct, for purposes of the rule, means "perverse in resisting authority" and "stubbornly disobedient." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (quoting *Webster's Third New International Dictionary* 497 (1986)). This Court's local rules also contemplate dismissal for failure to prosecute when there has been "no action . . . taken on a case for nine months." LR 41.1.

The record reflects no involvement by Carter in this case since it was removed to this Court nearly two years ago. Carter's attorney withdrew early in the proceedings, citing an inability "to obtain and ensure prompt and complete communication with" Carter. (D.N. 15) Since that time, Carter has repeatedly failed to respond to both the defendant's requests and the Court's orders. (*See* D.N. 19 (noting that Carter failed to appear at a scheduling conference); D.N. 20 (noting that the Carter failed to respond to two scheduling letters sent by the defendant)) Carter was warned by the Court that he has an obligation to "follow this Court's Orders and respond to Defendant's counsel's requests to negotiate a scheduling order." (D.N. 21) Despite this warning, Carter did not respond or communicate with the Court or the defendant. In sum, Carter's disregard for the Court's orders and the prejudice he has caused to the defendant represent "contumacious conduct" sufficient to warrant dismissal for failure to prosecute. *See Schafer*, 529 F.3d at 737.

## IV. CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Defendant IMI South, LLC's motion for summary judgment (D.N. 24) is **GRANTED**. A separate judgment will be entered this date.

November 29, 2018

David J. Hale, Judge
United States District Court